**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| STELLA REEVES, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 23-2017-BAH |
| MARYLAND DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE ADMINISTRATION, | * | |
| Defendant. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Stella Reeves ("Plaintiff") brought suit against the Maryland Department of Transportation, Motor Vehicle Administration ("Defendant") alleging various claims stemming from incidents occurring during the course of her employment and challenging her termination by Defendant. ECF 3 (corrected complaint).[1] Pending before the Court is Defendant's motion for summary judgment, ECF 64, and Plaintiff's motion for leave to file a surreply, ECF 84. Plaintiff filed a response in opposition to the motion for summary judgment, ECF 73, to which Defendant replied, ECF 79. Plaintiff then sought leave to file a surreply, which Defendant opposed, ECF 85, followed by Plaintiff's reply, ECF 86. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the motion for summary judgment, ECF 64, is GRANTED, and the motion to file a surreply, ECF 84, is DENIED.

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

# I. BACKGROUND

## A. Factual Background[2]

Plaintiff began working for Defendant on a probationary status on November 16, 2022, as a "Customer Agent I." ECF 64-1, at 4 (Defendant's memorandum of law in support of motion for summary judgment). In this role, Plaintiff staffed the "Self Service Kiosk" at the MVA branch in Largo, Maryland, which also served as the first point of contact for customers entering the branch. ECF 3, at 3 ¶ 18. Plaintiff's probationary period was initially set to expire on May 14, 2023, but in April 2023 her probationary status was extended to November 14, 2023, to allow for additional training. ECF 64-4 (initial probationary performance determination dated April 2023). Approximately a month after the decision to extend her time on probationary status, on May 26, 2023, Defendant terminated Plaintiff, citing "[p]rocessing [e]rrors" and "serious misconduct" in the form of "serious breach of discipline (unprofessional behavior)." ECF 64-5, at 2 (initial probationary performance determination dated May 2023).

Plaintiff's difficulties at work began after an alleged incident in mid-December 2022, when a visibly upset African American man approached Plaintiff, who is herself an African American woman, at the Self Service Kiosk. ECF 3, at 2 ¶ 11, 3 ¶ 19. The man cried as he told Plaintiff that one of Plaintiff's white coworkers had belittled him and referred to him using offensive language, including racial slurs, during a previous visit to the MVA. *Id.* at 3 ¶¶ 19–20. The man then opened his coat and showed Plaintiff a gun he had on his person,[3] saying something to the effect of "that his plan was to 'make sure [Plaintiff's coworker] never speaks

[2] The facts provided in this section are taken from the parties' summary judgment motion filings and attached exhibits, ECF 64, ECF 73, ECF 79, with reference to Plaintiff's corrected complaint, ECF 3.

[3] The Court cites the complaint here because it provides a more complete narrative of this incident, but notes that in Plaintiff's opposition to the motion for summary judgment, she describes the event differently, stating instead that the gun was "pointing directly in [Plaintiff's] face." ECF 73, at 36.

to another human being in such a despicable and deplorable manner again.'" *Id.* at 4 ¶¶ 20–21. Plaintiff successfully deescalated the situation, and the man left without incident. *Id.* ¶ 24. Plaintiff then reported the incident to her supervisor, Ronnie Beil ("Mr. Beil"). ECF 64-13, at 13–14 (deposition of Plaintiff); ECF 64-6, at 6–7 (administrative record).[4]

At the beginning of Plaintiff's time at the MVA, multiple employees were stationed at the Self Service Kiosk at a time. ECF 3, at 3 ¶ 18, at 4 ¶ 28. Plaintiff had a pre-existing injury to her ankle and legs that made walking and standing for long periods of time difficult. *Id.* at 4 ¶ 27. Following her report of the incident with the gunman, Plaintiff alleges that she was labelled the "in-house whistle blower, the in-house snitch, and the in-house tattle tale" and suffered retaliation in the form of understaffing at the Self Service Kiosk that exacerbated her injury. ECF 73, at 31, 33 (capitalization altered) (emphasis and internal quotations omitted); ECF 3, at 5 ¶¶ 29–33. Plaintiff reported these issues to Mr. Beil and via an internal "Employee Report of Accident/Personal Injury Form." *Id.* at 5–6 ¶¶ 31, 38. She also wrote to the MDOT MVA Office of Civil Rights and Fair Practices ("MVA OCRFP") on February 24, 2023, detailing "bullying and harassment by coworkers, her injury, and her need for support at the Kiosk." *Id.* at 6 ¶ 37; ECF 73-9 at 13. Plaintiff additionally visited the MDOT MVA headquarters in person on March 1, 2023, to meet with human resources staff and share her concerns about her workplace and training. ECF 73-9, at 5.

Plaintiff alleges that she was not receiving adequate training throughout her time working for Defendant. *See, e.g.*, ECF 73, at 22, 51. This allegation appears to arise from the

[4] There is conflicting evidence regarding the timing and scope of Plaintiff's report of this incident. *Compare* ECF 64-13, at 13–14 (Plaintiff stating that she told her supervisor and the police officers on duty immediately), *with* ECF 64-6, at 6–7 (Mr. Beil testifying that Plaintiff did not report the incident to him until January 2023, and that Plaintiff denied reporting the incident previously to any other entities); *see also* ECF 73, at 31 (describing a report filed with Chief Sergeant Miliam). However, because the Court concludes that this report is not a protected activity under Title VII, *see infra* Section III.A.2.i., the dispute does not relate to a material fact and does not defeat summary judgement.

high rate of turnover in her assigned trainers. *Id.* at 33. Plaintiff attributes the turnover to retaliatory animus, while Defendant avers that the turnover was due to Plaintiff's demeanor causing interpersonal conflict. *Compare* ECF 73, at 33 (identifying having had nine different trainers in two months as retaliatory), *with* ECF 64-6, at 7 (testimony of Plaintiff's branch manager, Mr. Beil, stating that Plaintiff "was frustrating every single trainer she had").

On March 17, 2023, Plaintiff again wrote a letter to MVA OCRFP documenting her concerns over the alleged bullying and alleging that she was receiving insufficient training. ECF 3, at 7 ¶ 46; ECF 73-9, at 13. Just three days later, MVA OCRFP held a meeting about Plaintiff's concerns attended by the director of OCRFP, the MVA's EEO officer, the district manager of Plaintiff's district, and Plaintiff's branch manager and assistant branch manager. *Id.* at ¶ 47. Three days after that meeting, and less than a week after Plaintiff's most recent MVA OCRFP complaint, Plaintiff submitted a "Complaint of Workplace Bullying" to the MVA on March 23, 2023. *Id.* at ¶ 48. On May 16, 2023, the director of the MVA OCRFP sent a letter to Plaintiff that "described the March 20, 2023 meeting" and informed Plaintiff that the MVA OCRFP had taken "appropriate action as needed" regarding Plaintiff's complaints of bullying. *Id.* at 10 ¶ 64.

On March 24, 2023, Plaintiff's supervisor prepared an "Employee Development Plan" for Plaintiff. ECF 3, at 7 ¶ 49; ECF 73-12, at 7–9. That same day, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). ECF 3, at 7 ¶ 50; ECF 73-9, at 7. Plaintiff ultimately received a right-to-sue letter relating to this charge dated April 28, 2023. *Id.* at 2 ¶ 5; ECF 73-9, at 12. Plaintiff also filed an "OSHA online whistleblower / retaliation" complaint on April 16, 2023. ECF 73-9, at 8.

On April 20, 2023, Plaintiff mistakenly "allowed a customer who was not qualified for a license to enter the driving test room." ECF 3, at 8 ¶ 54. Five days later, the MVA conducted an "Investigatory Interview" with Plaintiff regarding her mistake on April 20, followed by a

"Discipline Decision Meeting" the next day, April 26, 2023. *Id.* at 8–9, ¶¶ 56–58; ECF 73-8, at 2–5. Ultimately, the MVA issued a written counseling letter advising Plaintiff that "[a] recurrence of this infraction may result in progressive discipline up to and including termination." ECF 73-8, at 4.

Around that same time, in late April 2023, Plaintiff had a conversation with one of her coworkers in which the coworker invited Plaintiff to an adult entertainment establishment and asked for Plaintiff's phone number. ECF 3, at 8 ¶ 55. Plaintiff declined the invitation and explained "that the invitation made her uncomfortable" and that "she did not trust coworkers with her personal phone number." *Id.* Following an apparent report from her coworker, Defendant held an "Investigatory Interview" with Plaintiff regarding her conversation with her coworker, either on April 26, 2023, May 2, 2023, or both. ECF 73-8, at 6–7.[5] Plaintiff's notice of the "Investigatory Interview," indicated that she had "made a coworker feel uncomfortable at work by stating '[that she] was told [she] couldn't trust [the coworker].'" ECF 73-8, at 6. Ultimately, the MVA decided that no disciplinary action was warranted towards Plaintiff regarding the conversation with her coworker. ECF 73-8, at 11. Plaintiff alleges that the events surrounding this conversation with her coworker amount to harassment, abuse, and retaliation. ECF 73, at 35.

Defendant terminated Plaintiff on May 26, 2023, and additionally issued a "Notice of Disqualification from Future Employment," which barred Plaintiff from employment with MDOT and the MVA for the next five years. ECF 64-5, at 2; ECF 64-1, at 14; ECF 73-13, at 20. Plaintiff filed a grievance related to her termination with the assistance of her union

[5] Plaintiff filed notices of investigatory interviews regarding this incident for both dates, but did not indicate whether two investigatory interviews occurred. ECF 73-8, at 6–7. Her complaint alleges that the interview took place on April 26, 2023. ECF 3, at 9 ¶ 62. However, a summary of "[i]nvestigatory [q]uestions" provided by Plaintiff and dated May 2, 2023, notes that Plaintiff answered, "I plead the fifth"—presumably a reference to the Fifth Amendment to the United States Constitution—to eight out of ten questions posed to her during her interview. ECF 73-13, at 6–7.

representative on June 2, and submitted a "Disciplinary Action Appeal Form" challenging her disqualification from future employment with MDOT on June 5, again with the assistance of the union. ECF 3, at 10 ¶¶ 68–69. On June 21, 2023, Plaintiff filed an additional EEOC Charge of Discrimination relating to the incident in which her coworker asked for her number. ECF 73-9, at 22. The Maryland Office of Administrative Hearings subsequently held a full hearing, spanning two sessions, adjudicating and ultimately rejecting Plaintiff's collateral state claim that she was terminated for an illegal or unconstitutional reason. ECF 64-1, at 5; ECF 64-8, at 3, 17.

**B. Procedural History**

Plaintiff filed this lawsuit on July 26, 2023, less than 90 days after she received her EEOC right-to-sue letter dated April 28, 2023. ECF 1; ECF 3, at 2 ¶ 6. Plaintiff subsequently filed the operative "corrected" complaint. ECF 3. On July 1, 2024, this Court granted in part and denied in part Defendant's motion to dismiss. ECF 21 (memorandum opinion adjudicating motion to dismiss).[6] Plaintiff's sole surviving claim is retaliation in violation of Title VII. ECF 21, at 9; ECF 3, at 12–14 ¶¶ 84–95. Defendant filed the instant motion for summary judgment on February 24, 2026. ECF 64. Plaintiff filed her response in opposition on March 20, 2026, ECF 73, and Defendant replied on April 24, 2026, ECF 79. Plaintiff filed her motion for leave to file a surreply on May 27, 2026, ECF 84, to which Defendant responded, ECF 85, followed by Plaintiff's reply, ECF 86.

## II. LEGAL STANDARD

**A. Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the

---

[6] Also available at *Reeves v. Maryland Dept. of Transp., Motor Vehicle Admin.*, Civ. No. BAH-23-2017, 2024 WL 3252975 (D. Md. July 1, 2024).

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 372 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 372 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

**B. Summary Judgment in the Title VII Context**

A plaintiff in an employment discrimination case is entitled to *de novo* review in the district court. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). However, *de novo* review does not give the court *carte blanche*. A federal court "may only consider those allegations included in the EEOC charge," *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 407 (4th Cir. 2013), and those that "can reasonably be expected to follow the charge of discrimination." *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981); *see also Evans*, 80 F.3d at 963.

Constrained by the scope of the EEOC charge and subsequent investigation, a plaintiff may meet her summary judgment burden of establishing a genuine dispute of material fact either by offering direct or circumstantial evidence, or by proceeding under the scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Evans*, 80 F.3d at 959. *McDonnell Douglas* sets out a three-step scheme in which the plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Id.* If the plaintiff meets this burden, the defendant-employer can rebut the presumption of discrimination by presenting evidence of a legitimate, non-discriminatory reason for its employment actions. *Id.* If the defendant-employer provides this reason, the presumption of discrimination "drops out of the picture" and the burden shifts back to the plaintiff to

demonstrate that the defendant's rationale is pretextual. *Id.* At bottom, the "plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Id.* (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

In considering the ultimate question of pretext, the Fourth Circuit has repeatedly cautioned district courts to "take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue." *Evans*, 80 F.3d at 958–59 (citing *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1005 (4th Cir. 1987)). Nevertheless, "summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." *Id.* at 958–59.

**C. Motion For Leave to File a Surreply**

Surreplies are a unique type of filing that "are not permitted to be filed" absent express Court permission. Loc. R. 105.2(a) (D. Md. 2025). Courts usually grant leave to file a surreply "in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs." *Boland v. Amazon.com Sales, Inc.*, 628 F. Supp. 3d 595, 599 (D. Md. 2022). New matters are novel legal arguments raised in a reply that the opposing party has not been afforded the opportunity to properly address and are more than "alleged mischaracterization[s]" of facts or law. *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001); *see also EEOC v. Freeman*, 961 F. Supp. 2d 783, 802 (D. Md. 2013) (denying leave for surreply where movant sought to reiterate old arguments and where the movant had only identified "[v]ague allegations of inaccuracies alone"); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (denying leave for surreply in order to correct what the movant perceived to be the opposing party's "misrepresentations").

## III. ANALYSIS

The Court will first address the motion for summary judgment and then the motion for leave to file a surreply.

**A. Motion for Summary Judgment**

1. The Court's Consideration of the Administrative Record

As a preliminary matter, the Court will address the scope of its consideration of the administrative record from the Maryland state proceedings submitted by Defendant in support of the instant motion. ECF 64-6 (office of administrative hearings transcript of August 23, 2023); ECF 64-7 (office of administrative hearings transcript of October 30, 2023); ECF 64-8 (office of administrative hearings decision of Administrative Law Judge Mary Pezzulla, dated November 8, 2023); ECF 64-9 (Circuit Court for Prince George's County review of administrative process); ECF 64-10 (Appellate Court of Maryland review of administrative process); ECF 64-11 (Supreme Court of Maryland denial of petition for review of administrative process). Defendant argues that "[s]ummary judgment may be granted based upon facts developed during the administrative proceedings." ECF 64-1, at 9.

At the summary judgment stage, a federal district court may consider the record developed in prior administrative proceedings as long as it does not defer to the outcome of those proceedings. *Newsom v. Barnhart*, 116 Fed. App'x 429, 432 (4th Cir. 2004). Moreover, "exhibits need not be in admissible form to be considered at summary judgment, provided they could be put in admissible form." *Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 139 (D. Md. 2019) (citations omitted). Defendant represents that Mr. Beil, Plaintiff's branch manager, and Joseph Hargrove, the manager of the MVA OCRFP, will be called to testify if the case proceeds to trial. ECF 64-1, at 5. The Court therefore limits its consideration of this extensive administrative record to the sworn testimony of Mr. Beil and Mr. Hargrove and disregards both the findings of the administrative law judge and the outcome of the appellate process in these collateral state administrative proceedings.

2. Prima Facie Case

Because Plaintiff has not presented direct or circumstantial evidence of retaliation, the Court proceeds with its analysis through the *McDonnell Douglas* burden-shifting framework, beginning with Plaintiff's prima facie case of retaliation. Title VII of the Civil Rights Act prohibits status-based discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346–47 (2013); *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018). "Title VII also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding." *Angelini v. Balt. Police Dept.*, 464 F. Supp. 3d 756, 776 (D. Md. 2020) (citing 42 U.S.C. § 2000e–3). "In order to establish a prima facie case of retaliation, a plaintiff must prove three elements: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *Equal Employment Opportunity Comm'n v. Navy Federal Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005) ("*EEOC*"). The Court will address each element in turn.

*i. Protected Activity*

Defendant concedes that Plaintiff engaged in protected activity with regard to her reports to the MVA OCRFP, as well as her reports to the EEOC, "beginning with her first filing with the MVA's Office of Civil Rights and Fair Practices on March 1, 2023." ECF 64-1, at 11–12. However, Defendant contends that Plaintiff's report of the incident with the gunman is not a protected activity under Title VII. *Id.* at 12. Defendant does not provide a legal argument or any support for its contention that it is not a protected activity, *id.*, but later argues that Plaintiff conceded the point in her response, *see* ECF 79, at 5; ECF 73, at 36. It is unclear whether Plaintiff's response intends to concede this point, and the Court is mindful of its obligation to "liberally construe a *pro se* plaintiff's submissions." *Ross v. Federal Bureau of*

*Alcohol, Tobacco, Firearms, & Explosives*, 903 F. Supp. 2d 333, 339 (D. Md. 2012). However, the Court agrees that the act of reporting the incident with the gunman itself, which occurred in either December 2022 or January 2023, ECF 64-13, at 13–14; ECF 64-6, at 6–7, is not a protected activity.

Title VII proscribes certain "[u]nlawful employment practices." 42 U.S.C. § 2000e–2. An individual engages in protected activity under Title VII when they have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Since this statute focuses its protection on the employee-employer relationship, reporting or investigating acts of discrimination by an employer or coworker against a non-employee does not constitute a protected activity. *See, e.g.*, *Wimmer v. Suffolk Cnty. Police Dept.*, 176 F.3d 125, 135 (2d Cir. 1999) (holding that evidence of discriminatory actions against the public does not create a Title VII claim absent evidence "that there was unlawful discrimination with respect to the terms and conditions of employment"). In *Crowley v. Prince George's Cnty.*, the Fourth Circuit considered a Title VII retaliation claim brought by a police department employee charged with investigating reports of police discrimination and harassment. 890 F.2d 683, 684, 687 (4th Cir. 1989). The Court concluded that the claim was not cognizable because the plaintiff had not claimed that "he ha[d] been retaliated against for investigating discriminatory *employment* practices within the police department"—his claim was limited to alleged retaliation due to his investigation of outward-facing "instances of racial harassment perpetrated by police officers against members of the community." *Id.* at 687 (emphasis in original).

Plaintiff's alleged report of the gunman incident is similarly focused on acts of discrimination by a coworker against a member of the community. ECF 3, at 3 ¶ 20. Because her report of this incident was focused on the danger the gunman, a non-employee member of the public, presented to the MVA, as well as a summary of the "derogatory, racial comments"

an MVA employee allegedly made to the alleged gunman, *id.* at 4 ¶ 26, Plaintiff's initial report of this incident is not a protected activity under Title VII. Rather, her protected activities are her reports of allegedly retaliatory acts taken against her in the employment sphere following that report. The Court therefore limits its analysis of second and third elements of a prima facie case for retaliation to Plaintiff's internal and external complaints that she was suffering harassment, bullying, inadequate training, and the like, beginning with her February 24, 2023, report to the MVA OCRFP. ECF 3, at 6 ¶ 37.

*ii. Adverse Action*

A successful plaintiff in a retaliation case must next establish that she suffered adverse employment action. *EEOC*, 424 F.3d at 406. To qualify as a materially adverse action in the retaliation context, the adverse action must be of the type that "might have dissuaded a reasonable worker" from engaging in protected activity. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted); *Strothers*, 895 F.3d at 327 (4th Cir. 2018). Termination is a quintessential example of an adverse employment action. *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (identifying "termination, failure to promote, denial of transfer, [and] refusal to hire" as adverse employment actions).

Defendant concedes that Plaintiff's ultimate termination and accompanying five-year ban on seeking employment with the MVA is an adverse employment action, but argues that Plaintiff has not established any other adverse employment actions. ECF 64-1, at 12. Plaintiff alleges that she suffered a slew of adverse actions in the form of various write-ups and reprimands filed against her. ECF 73, at 38–39. Because Defendant concedes that Plaintiff suffered some adverse action, and the Court ultimately concludes that Plaintiff fails on the final step of the *McDonnell Douglas* burden-shifting framework—demonstrating that Defendant's non-retaliatory reason for its actions was pretextual, *see infra*, Section III.A.4—the Court need

not determine the exact parameters of which of these events constitute an adverse employment action.[7]

*iii. Causation*

The final step in Plaintiff's prima facie case is establishing that "there was a causal link" between her protected activity and the adverse employment action. *EEOC*, 424 F.3d at 406. Defendant argues that because in their view Plaintiff has not established that the final decisionmaker in her termination, Christine Nizer, was aware of her protected activity or held retaliatory animus towards her, she is unable to establish causation. ECF 64-1, at 14–15. Plaintiff responds that "[Nizer's] information about me . . . had to come from the Lead Head Branch Manager, Mr. Ronnie Beil." ECF 73, at 15 (emphasis and internal quotations omitted). Defendant argues in the alternative that the temporal proximity between Plaintiff's protected activity and her termination is not sufficiently close to establish a prima facie claim of causation. ECF 64-1, at 15–16.

Defendant's first argument cannot prevail at the summary judgment stage, where the Court is obligated to make all reasonable inferences in favor of the nonmoving party. *Tolan*, 572 U.S. at 657. Many of the alleged reasons for Plaintiff's termination overlap with the actions Plaintiff avers were retaliatory and about which she filed numerous reports and complaints. For instance, Defendant contends that Plaintiff's difficult relationships with her trainers formed part of the basis for her termination. ECF 64-6, at 6–8 (testimony of Mr. Beil). However, Plaintiff filed numerous complaints alleging that she was receiving inadequate training due to retaliatory animus. *See, e.g.*, ECF 73-9, at 5. This overlap supports the reasonable inference that the ultimate decisionmaker in Plaintiff's termination, when

[7] The Court notes, however, that to the extent Plaintiff contends the alleged understaffing at the Self Service Kiosk was an adverse act, *see, e.g.*, ECF 73, at 18, 22, 32–33, because the date of the staffing change predates her first protected action, ECF 3, at 5 ¶ 29, this argument would fail on the causation prong.

considering her training difficulties, was aware of Plaintiff's protected activity in submitting complaints related to that topic. *See Ellerbe v. Thomas*, Civ. No. 1:22-2598-JD-SVH, 2023 WL 6645028, at *20 (D.S.C. Mar. 29, 2023) ("[T]he court is tasked both with taking evidence in light most favorable to [p]laintiff in determining whether his claim survives under the familiar summary judgment standard and affording [p]etitioner's submissions an appropriately liberal construction afforded to pro se litigants.").

The temporal proximity between Plaintiff's protected activity and the adverse employment actions is sufficient to satisfy the causation element of Plaintiff's prima facie case. A causal connection exists when an employer takes a particular adverse action "*because* the plaintiff engaged in a protected activity." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). An employee may establish prima facie causation simply by showing that: "(1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers*, 895 F.3d at 336 (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). The temporal proximity must be "very close," and courts have found that periods of three or four month delays defeat a finding of causation on this basis. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (collecting cases); *see also Barnhill v. Bondi*, 138 F.4th 123, 132 (4th Cir. 2025) ("While there is not a bright-line rule instructing when temporal proximity is sufficient to establish causation, without other evidence of causation, the gap between the protected activity and the adverse employment action can generally be no longer than two months.").

Plaintiff has met her burden to establish a prima facie case of causation at the summary judgment stage. As this Court observed in its prior memorandum opinion in this case, Plaintiff

has now established "that she engaged in a protected activity, filing an EEOC charge, on March 24, 2023, and that she was notified of her termination on May 26, 2023. Taking all inferences in favor of Plaintiff, this supports Plaintiff's assertion that she was terminated in retaliation for her protected activity." ECF 21, at 15–16 (citations omitted); *see also Tolan*, 572 U.S. at 657 (admonishing courts to draw all reasonable inferences in favor of the nonmoving party at the summary judgment stage). The less than two months between this protected activity and her termination is within the timeframe recognized by the Fourth Circuit as just short enough to establish Plaintiff's prima facie case. *See Barnhill*, 138 F.4th at 132.

3. Employer's Rebuttal

Once a plaintiff has established her prima facie case of Title VII retaliation she is entitled to a presumption that the employer engaged in prohibited employment practices, and the burden shifts to the employer to rebut the presumption. *Evans*, 80 F.3d at 959; *see also Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (describing the employer's burden at this stage "to show that it took adverse action for a legitimate non-retaliatory reason"). Defendant has presented sufficient evidence to rebut the presumption that it retaliated against Plaintiff.

Defendant presented Plaintiff with a document upon her termination, which indicated that the reasons for that decision were her "serious breach of discipline (acts of unprofessional behavior) and [p]rocessing [e]rrors." ECF 64-5, at 2. Plaintiff appears to contend that this determination lacks specificity and is therefore insufficient to meet Defendant's burden on this point. ECF 73, at 16, 25, 46. The Court agrees that the one sentence statement of reasoning on the form Plaintiff received at the time of her termination is likely inadequate to establish a non-retaliatory reason for Defendant's actions. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981) ("[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific.").

However, Defendant has presented additional evidence to bolster its initial statement regarding Plaintiff's behavior at work and ability to perform her job responsibilities—in particular, the testimony of her supervisor, Mr. Beil. He testified that Plaintiff engaged in an array of inappropriate behavior in the course of her job, including excessive solicitation of customer comment forms, commenting on a coworker's "backside," and being disrespectful to her supervisors—including calling them "the devil." ECF 64-6, at 6–8. He detailed relational difficulties between Plaintiff and her trainers arising from Plaintiff calling them "the devil" when they tried to correct her work, as well as Plaintiff's propensity to challenge basic tasks they were teaching her. *Id.* at 7. Additionally, her trainers "would always debrief" the MVA supervisors and "indicat[e] that [Plaintiff] just wasn't retaining anything" from her training. *Id.* at 10. And despite the manager of MVA OCRFP taking the uncommon step of involving himself in the training of an employee, ECF 64-7, at 6 (testimony of Mr. Hargrove), Plaintiff continued to chafe against her training plan and commit processing errors. *See* ECF 64-6, at 10 (describing Plaintiff's refusal to sign her training plan form and noting that her supervisors observed errors on her part after she was "let [ ] loose" to work on her own); *see also Evans*, 80 F.3d at 960 (noting that "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision"). Defendant has therefore presented sufficient evidence of its non-retaliatory reasons for terminating Plaintiff to meet its burden at this step.

4. <u>Plaintiff's Burden</u>

Upon a defendant's successful rebuttal of the presumption established by the plaintiff's prima facie case, the burden returns to the plaintiff to present evidence that the non-retaliatory reason for the adverse employment action was pretextual. *Evans*, 80 F.3d at 959. Plaintiff has indicated that she would be the only witness to testify on her behalf if the case were to proceed to trial. ECF 64-12, at 16 (identifying no witnesses in response to Defendant's interrogatories);

ECF 64-13, at 17–18 (responding "Me and God" when asked at deposition to identify who would be testifying in her case). Ms. Reeves provides no details as to what portions of her testimony or other evidence in the record rebut Defendant's explanation for her termination. *See, e.g.*, ECF 73, at 46 (referencing without detail "extensive amounts of evidence of proof, in material facts, of documentation in questioning to what exactly is the real truth, literally causing [supervisors] to contradict themselves"); *id.* at 47 (alleging without detail that she was "illegal and wrongfully [t]erminated, resulting in a legitimate cause and reason, acknowledgements that these were clear violations of [d]iscrimination in many area[]s, [w]hich are violations of the 'Civil Rights Act'" (emphasis omitted)). "As courts are not free to second-guess an employer's business judgment, a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions] and avoid summary judgment." *Langerman v. Thompson*, 155 F. Supp. 2d 490, 499 (D. Md. 2001) (quoting *Brown v. Brody*, 199 F.3d 446, 458–59 (D.C. Cir.1999) (alterations in original)). Because Plaintiff's claims of pretext do not go beyond "mere speculation," *id.*, and she has not adduced documentary evidence in any form of pretext, Plaintiff has not met her "ultimate burden of proving that the employer intentionally discriminated"—or, as here, retaliated—"against her," *Evans*, 80 F.3d at 959. *See id.* at 960 (noting that "[w]hile a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient.").

At best, Plaintiff seeks to demonstrate that Defendant's reasons for terminating her were pretextual because in her view, there is too much positive evidence of her character and job performance for their stated concerns to be the reason for their decision. *See* ECF 73, at 11 (stating that "[b]ecause of the amount of positive evidence, [Plaintiff's termination] could not have been because of any [p]erformance and [b]ehavior [i]ssues" as Defendant "falsely alleged" (emphasis and internal quotations omitted)). Plaintiff appended numerous character

letters from various people in her community, including a day care director, a pastor, and a medical professional. ECF 73-3, at 3–4, 7–8. However, the positive opinion of community members who were not part of Plaintiff's workplace is not sufficient to create a genuine dispute of material fact as to her actions *within* the workplace, which Defendant has offered as the reason for Plaintiff's termination. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir. 1992) (finding that positive evaluations did not establish pretext when those evaluations "praised [plaintiff] for skills other than" those underpinning the reason for the challenged employment decision); *see also U.S. ex rel. King v. Solvay S.A.*, Civ. No. H–06–2662, 2015 WL 4256402, at *11 (S.D. Tex. July 14, 2015) (finding that "positive performance reviews, and exemplary past performance are not substantial evidence of pretext in light of the discrete violations [of company policy] that led to the terminations"); *Lewis v. Richland County Recreation Commission*, No. 3:16-cv-2884-MGL-TER, 2018 WL 4957407, at *8 (D.S.C. July 30, 2018) (determining that plaintiff's "'exceeds expectations' reviews alone are insufficient to show pretext" in part because "the reason given for [the challenged employment decision] was not for poor performance").

Plaintiff additionally argues that Defendant's contention that she did not "reach[] and perform[] in the necessary skill[] levels of [her] job [p]erformance" is false because she received a "high and passing approval level" in a job evaluation. ECF 73, at 12. This argument appears to rely on a 2022 performance review which indicated Plaintiff met, but did not exceed, expectations. ECF 73-5, at 2–4. However, Plaintiff's argument "fails to prove pretext because 'acceptable job performance in the past does not establish acceptable job performance at the time of termination.'" *Storm v. Berryhill*, Civ. No. 1:17-cv-1183-LO-JFA, 2018 WL 4609934, at *5 (E.D. Va. Sep. 15, 2018) (quoting *Diamond v. Bea Maurer, Inc.*, 128 Fed. App'x 968, 973 (4th Cir. 2005)).

Plaintiff additionally included copies of positive customer reviews, apparently in an attempt to negate Defendant's concerns around her reported processing errors. ECF 73-5, at 7–99. However, the satisfaction of individual customers can coexist with the other issues outlined by Defendant's evidence, such as belligerence with supervisors and difficulty with training. ECF 64-6, at 6–8. In fact, the volume of positive customer reviews Plaintiff included—approximately 92 pages—serves to corroborate Mr. Beil's concern that Plaintiff solicited such customer feedback at an inappropriate rate, serving to "stop[] progress" at the Self Service Kiosk. *Id.* at 6. Moreover, Plaintiff appears to acknowledge that there was "confusion and conflict and mis-understanding" between herself and her trainers, again bolstering, rather than rebutting, Defendant's stated reason for her dismissal.[8] ECF 73, at 22.

Plaintiff's response includes a list of 20 "[a]dverse [e]mployment [a]ctions" Defendant allegedly took against her. ECF 73, at 38–39. The Court found it unnecessary to determine whether these actions constitute a prima facie case of retaliation, *see supra* Section III.A.2.ii., because even assuming arguendo that each of these actions forms the basis of a prima facie case, Plaintiff has not established that Defendant's stated reason for each action was pretextual. For instance, in many of these claims Plaintiff merely alleges that she suffered a false accusation of misconduct. ECF 73, at 38–39. Mr. Beil's testimony outlined his concerns regarding Plaintiff's acts of misconduct, ECF 64-6, at 6–8, and without specific evidence from Plaintiff that these concerns were pretextual, Plaintiff cannot meet her burden. *See Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (concluding that plaintiff's own

[8] Although Plaintiff argues that her training difficulties were the result of Defendant's intentional denial of "proper train[ing] to maintain [Plaintiff's] position," ECF 73, at 22, she provides no evidence to support this claim. *See Stoyanov v. Winter*, Civ. Nos. RDB-05-1567, RDB-05-1611, 2007 WL 2359771, at *6 (D. Md. Aug. 15, 2007) ("[U]nsubstantiated allegations and bald assertions will not carry the day for the employee." (citing *Evans*, 80 F.3d at 960)). Given the evidence of the specialized training plans Defendant developed for Plaintiff, there is not a genuine dispute of material fact on this point. ECF 73-12, at 2–10.

opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact").

**B. Motion For Leave to File a Surreply**

Plaintiff seeks the Court's leave to file a surreply to Defendant's reply in the motion for summary judgment briefing. ECF 84. Defendant opposes this request. ECF 85. Plaintiff does not argue that Defendant raised novel legal arguments in its reply, *see generally* ECF 84, ECF 86 (reply in support of motion for leave to file a surreply)—nor could she, as Defendant's reply is constrained to the scope of the arguments each party had already raised. *See generally* ECF 79. Plaintiff argues, rather, that her surreply is warranted to correct Defendant's "radical distorted [i]nterpretation of evidence." ECF 84, at 1. However, the desire to correct perceived "misrepresentations" is not sufficient to warrant leave to file a surreply. *Khoury*, 268 F. Supp. 2d at 606. Because Plaintiff has not identified a "new matter" raised in Defendant's reply, her request for leave to file a surreply is denied. *Boland*, 628 F. Supp. 3d at 599.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motion to file a surreply is **DENIED**.

A separate implementing Order will issue.

Dated: September 24, 2026

/s/
Brendan A. Hurson
United States District Judge